UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CITY OF RIVERVIEW,

        Plaintiff,        CASE NO. 18-11370
                              HON. DENISE PAGE HOOD
v.

OPERATING ENGINEERS LOCAL
324 PENSION FUND,
JOHN STICKEL,
JOHN DOE,
INTERNATIONAL UNION OF OPERATING
ENGINEERS LOCAL 324,

        Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS [#8; #9]

### I. BACKGROUND

#### A. Procedural Background

On May 1, 2018, Plaintiff City of Riverview ("the City") brought this second action against Defendants Operating Engineers Local 324 Pension Fund ("the Fund"), International Union of Operating Engineers Local 324 ("the Union"), John Stickel ("Stickel"), and John Doe (potentially other vested individuals) (collectively, "Defendants"), requesting declaratory relief from this Court pursuant to 28 U.S.C. § 2201 (Count I). (Doc # 1, Pg ID 7) Plaintiff's claims are based on its belief that

1

under the Michigan Constitution, the City lacked the authority to become party to a multi-employer pension plan that requires Plaintiff to contribute money to pay for the pension benefits of persons who are not employed by the City and have not provided services to the City. (Doc # 1, Pg ID 15)

Plaintiff previously filed a Complaint for Declaratory Judgment in the Oakland County Circuit Court (the "State court case") against the Fund, in which it sought the same relief that it is seeking from this Court. (Doc # 1, Pg ID 4) Plaintiff specifically sought declaratory rulings on issues pertaining to Michigan Constitutional law. (*Id.*) On or about March 20, 2015, the Fund removed the State court case to federal court. (Doc # 1, Pg ID 5) Plaintiff subsequently filed a Motion to Remand, which this Court granted on May 28, 2015. (*Id.*) On or about August 19, 2015, the Fund filed a Motion for Summary Disposition on remand, which the State trial court granted. (*Id.* at 5-6.) The State trial court ruled that it lacked the requisite subject matter jurisdiction necessary to decide Plaintiff's questions that pertained to Michigan law because Plaintiff's claims were "defensively preempted" under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 USC §1001, *et seq*. (*Id.*) On March 25, 2016, Plaintiff filed an appeal as of right to the Michigan Court of Appeals. (Doc # 1, Pg ID 6) On May 30, 2017, the Michigan Court of Appeals affirmed the Michigan trial court's opinion, and held that the State court did not have subject matter jurisdiction over Plaintiff's

claims. (*Id.*) On July 10, 2017, Plaintiff filed an Application for Leave to Appeal with the Michigan Supreme Court. (*Id.*) On December 27, 2017, the Michigan Supreme Court denied Plaintiff's Application. (*Id.*) The City then filed its second case in federal court requesting that this Court grant it declaratory relief on the basis that this Court has proper subject matter jurisdiction over its claims that were brought in the State court case. (Doc # 1, Pg ID 7) Plaintiff asserts that based on "the broad language of ERISA and the US Constitution," this Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1144(a), 29 U.S.C. § 1451(a)(1) and 28 U.S.C. § 1331. (*Id.*)

This matter is before the Court on the Fund's Motion to Dismiss (Doc # 8) and the Union and Stickel's Motion to Dismiss (Doc # 9). Plaintiff filed a Response to both Motions on August 3, 2018. (Doc # 17) The Fund filed a Reply on August 17, 2018. (Doc # 19) The Union and Stickel filed a Reply on August 17, 2018. (Doc # 20)

### B. Factual Background

The Fund is believed to be a pension plan of the Union. (Doc # 1, Pg ID 2) The Union is a collective bargaining agent that represents employees who are beneficiaries of the Fund, including current or former employees of the City. (*Id.*) Stickel is an employee (or former employee) of the City who has participated in the Fund, and who is believed to be a vested beneficiary of the Fund as a result of having

provided services to the City.  (*Id.*)  Plaintiff alleges that Stickel's presence in this case may be necessary in order for the Court to grant complete relief.  (*Id.*)

The Fund receives various fringe benefit contributions made by employers that are bound by a master agreement between the Associated Underground Contractors ("AUC") (a multi-employer association) and the Union.  (Doc # 1, Pg ID 3)  The Fund is maintained and administered pursuant to ERISA and Section 302 of the Labor-Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. § 186, *et seq.*  (*Id.*)  Since 2000, the City has entered into several collective bargaining agreements with the Union that require it to contribute to the Fund on behalf of certain employees who perform work for the City.  (*Id.*)  The number of contributions that are to be made by the City is determined by the AUC, the Fund, and the Union.  (Doc # 1, Pg ID 8)  The City has no input on this matter.  (*Id.*)

Once the parties' 2007 Collective Bargaining Agreement expired, the City determined that the mandatory contributions that it previously had to make to the Fund had become financially burdensome.  (*Id.*)  When this was expressed to the Fund, the Fund responded by explaining to the City that if it withdrew from the Fund, or refrained from making contributions to the Fund on behalf of its temporary employees, withdrawal liability would be assessed against the City under ERISA.  (Doc # 1, Pg ID 8-9)  It has been alleged by Plaintiff that initially, the Fund expressed that the withdrawal liability to the City would amount to $3,240,000.  (*Id.* at 9.)  As

4

of April 30, 2016, the withdrawal liability exposure has grown to approximately $4,561,124. (*Id.*) Following the expiration of the 2007 Collective Bargaining Agreement, the parties ultimately reached a successor collective bargaining agreement for the period of July 1, 2017 through June 30, 2022. (*Id.*)

Shortly after the communication between the Fund and the City regarding Plaintiff's possible withdrawal liability, Plaintiff initiated its first action seeking declaratory relief in the State court case. (*Id.*) Plaintiff argued that the Michigan Constitution prohibited it from participating in the Fund. (*Id.* at 14.) According to Plaintiff, its participation in the Fund was a mistake of fact because it did not know that it could become liable to pay for the retirement benefits of persons that did not provide any services to the City in violation of its chartered rights and authority. (*Id.*) Plaintiff also claims that its participation in the Fund was a mistake of law because Article 7, Section 26 of the Michigan Constitution generally prohibits the lending of credit, and provides that the lending of credit by a municipality must be both authorized by law and be for a public purpose. (*Id.* at 10.) Plaintiff argues that "[a] public purpose only exists where the objective of expenditure is the promotion of the public health, safety, morals, general welfare, security, prosperity, and contentment of all the inhabitants or residents within the municipality, and where the public enjoys the benefit of the expenditure." (*Id.* at 11-12.)

Another argument made by Plaintiff is that it was illegal for the City to have participated in the Fund under Article 9, Section 2 of the Michigan Constitution, which prohibits municipalities from contracting away their power to tax. (*Id.* at 12-13.) Plaintiff claims that its connection with the Fund is unlawful since it "constitutes the illegal exercise of the City's power to tax… because of the potential and threatened claims by the Fund for the assessment of withdrawal liability." (*Id.* at 16.) The argument put forward by Plaintiff is that it cannot be liable for withdrawal liability because any money that would be paid by the City—which is the taxpayers' money—directly benefits the Fund, and those funds do not in turn benefit the City, and are not being used for a public purpose. (*Id.*) Plaintiff further argues that even if the payment of withdrawal liability was for a public purpose, case law dictates that it would nevertheless be an illegal lending of the City's credit because the entity receiving the money (the Fund) is not under the City's control. (*Id.* at 12.) Since the City is responsible for contributing to the Fund without its input, approval, or agreement, Plaintiff claims that its involvement with the Fund is unconstitutional under Michigan law. (*Id.* at 13.)

Based on the aforementioned facts, the City is seeking a declaration from this Court that:

1. The City is not a lawful party to a multi-employer pension fund that benefits non-employees of the City;
2. The City's participation in the Fund was void *ab initio*;

3. The City's participation in the Fund was a mistake of law;
4. The City's participation in the Fund was a mistake of fact;
5. The City is not bound by any agreement to contribute to the Fund;
6. The City has no obligation to contribute to the Fund on behalf of its employees;
7. The City may not be held liable for statutory withdrawal liability because it never was a lawful participant in the Fund from the outset;
8. The City is not subject to any withdrawal liability with respect to the Fund because the City cannot withdraw from something to which it was never a lawful participant;
9. The Court permanently enjoin the Fund, or any person or entity acting on its behalf, from attempting to assess or collect withdrawal liability from the City;
10. Order the Fund to reimburse the City for all contributions made by the City during the pendency of this matter, said contributions having been made under protest;
11. Order the Fund to reimburse the City for all contributions paid into the Fund since the original CBA in 2000 as the City's decision to participate in the Fund was a mistake of law or fact and because the City lacked the legal capacity to enter into a contract that required its participation in this multi-employer Fund such that the contract was void *ab initio* and of no legal force or effect;
12. Order that the benefits of Defendant Stickel, and other current or former employees for the City under the 2000 Agreement, the 2007 Agreement and/or the New CBA or at any other time, will not be diminished by granting the relief requested by the City herein;
13. Award the City all its costs and attorney's fees incurred in this matter; and
14. Grant such other and further relief as is available to the City within the power of this Court.

(*Id.* at 17-19.)

## II. ANALYSIS

### A. Standards of Review

#### 1. Rule 12(b)(1)

Fed. R. Civ. P. 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction. A Rule 12(b)(1) motion for lack of subject matter

7

jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack). *Cartwright v. Garner*, 751 F.3d 752, 759-60 (6th Cir. 2014) (*citing United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In the case of a facial attack, and the court takes the allegations of the complaint as true to determine whether the plaintiff has alleged a basis for subject matter jurisdiction. *Id.*

In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case. *Id.* Plaintiff bears the burden of establishing that subject matter jurisdiction exists. *DLX, Inc. v. Commonwealth of Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

**2. Rule 12(b)(6)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for a motion to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). This type of motion tests the legal sufficiency of the plaintiff's complaint. *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986). When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv Inc. v. Treesh*,

487 F.3d 471, 476 (6th Cir. 2007). A court, however, need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (*quoting Gregory v. Shelby Cnty.*, 220 F.3d 443, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Edison v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

As the Supreme Court has explained, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level… ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see LULAC v. Bresdesen*, 500 F.3d 523, 527 (6th Cir. 2007). To survive dismissal, the plaintiff must offer sufficient factual allegations to make the asserted claim plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**B. Defendant Operating Engineers Local Pension Fund's Motion to Dismiss**

    **1. Subject Matter Jurisdiction**

The Fund argues that Plaintiff's claims against it are premature according to 29 U.S.C. § 1451(a)(1) and claims that this Court lacks subject matter jurisdiction over the instant action. (Doc # 8, Pg ID 138) It is the Fund's contention that Plaintiff

does not meet the proper standard under 29 U.S.C. § 1451(a)(1) because it has not been "adversely affected" by an act or ommission because the City has not chosen to withdraw from the Fund. (*Id.*) The Fund argues that federal courts have only addressed withdrawal liability disputes after a withdrawal has occurred. (*Id.*)

Sixth Circuit courts have held that "[i]f a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *Dealer Computer Services, Inc. v. Dub Herring Ford*, 547 F.3d 558, 560 (6th Cir. 2008) (quoting *River City Capital, L.P. v. Bd. of County Comm'rs*, 491 F.3d 301, 309 (6th Cir. 2007)). "Thus, the doctrine serves as a bar to judicial review whenever a court determines a claim is filed prematurely." *Id.* Ripeness is "a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-808 (2003) (internal quotation omitted).

The essential factors to consider when determining the ripeness of a claim are: "(1) the likelihood that the harm alleged by the party will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits; and (3) the hardship to the parties if judicial relief is denied at this stage

in the proceedings." *USPS v. Nat'l Assoc. of Letter Carriers, AFL-CIO*, 330 F.3d 747, 751 (6th Cir. 2003).

The Fund contends that ERISA's procedures permit an employer to dispute withdrawal liability only after it has been assessed. (Doc # 8, Pg ID 123) It is argued by the Fund that because Plaintiff has not withdrawn from the Fund, the City's claims merely present "a hypothetical scenario that is premature for federal jurisdiction to be asserted." (*Id.* at 123-124.) However, Plaintiff does not attempt to dispute whether or not it was lawfully assessed with withdrawal liability under ERISA. (Doc # 17, Pg ID 375-376) Instead, Plaintiff is asking the Court to determine whether or not it should have been precluded from being involved with the Fund due to the restrictions that the Michigan Constitution imposes on municipalities. (*Id.* at 377.)

Applying the ripeness factors, the first factor, the likelihood that the alleged harm will come to pass, weighs in favor of the Fund. The City has not shown it would be harmed if the Court does not grant its request for declaratory relief. Even if the argument could be made that Plaintiff would be harmed if its request for declaratory relief was denied, the harm would arise after the City chose to withdraw from the Fund, and such harm would be self-imposed.

The second factor, whether the factual record is sufficiently developed to produce a fair adjudication of the merits, weighs in favor of the City. There are no

facts that demonstrate that the factual record is insufficiently developed for purposes of the Court ruling on Plaintiff's claims based on Michigan Constitutional law. The Fund does not argue otherwise.

The third factor, the hardship to the parties if judicial relief is denied at this stage in the proceedings, weighs in favor of the Fund. As mentioned, Plaintiff has not endured a hardship because it voluntarily entered into several agreements with the Fund and any hardships that it faces would be the result of its own decision-making.

The Court grants the Fund's Motion to Dismiss on Fed. R. Civ. P. 12(b)(1) grounds because the Sixth Circuit's three-factor ripeness analysis weighs in its favor.

Further, the Court does not have the jurisdictional authority to hear the City's claims. Authority for a federal court to adjudicate an action is limited by the powers bestowed upon it by the United States Constitution and by statute. *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994). "The primary jurisdictional statutes are 28 U.S.C. § 1331, which confers jurisdiction where the claim arises under federal law, and 28 U.S.C. § 1332, which confers jurisdiction where the claim is between parties of diverse citizenship." *Valinski v. Detroit Edison*, 197 F. App'x 403, 405 (6th Cir. 2006). This Court cannot hear Plaintiff's claims under 28 U.S.C. § 1331 because it is alleging that the City's agreements are void according to Michigan law. As courts have stated, "[m]ere reference to federal

law does not establish federal subject matter jurisdiction." *Reneaud v. City of Traverse City*, No. 1:13-CV-619, 2013 WL 4010250, at *2 (W.D. Mich. Aug. 5, 2013). Additionally, Plaintiff does not bring this action under the civil enforcement provision of 29 U.S.C. § 1132(a)(1)(B) or the multiemployer provision regarding the Fund's actions under 29 U.S.C. § 1451(a).

Plaintiff's claims also cannot be heard by this Court under 28 U.S.C. § 1332 because the parties are not of diverse citizenship, and Plaintiff does not argue otherwise.

## 2. Failure to State a Claim

The Fund argues that because ERISA has established procedures in place with respect to withdrawal liability, ERISA preempts the laws set forth in Michigan's Constitution that Plaintiff has used as the basis to assert its claims against the Fund. (Doc # 8, Pg ID 143-145) It is the Fund's belief that because ERISA unambiguously preempts state laws, the City's claims are without legal merit. (*Id.* at 142-145.)

The Supreme Court has held that "[a]ny state-law cause of action that duplicates, supplements, or supplants ERISA's civil enforcement remedy conflicts with clear congressional intent to make that remedy exclusive, and is therefore pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 200–201 (2004). ERISA has also been deemed a statute with unique preemptive force. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987).

While ERISA supersedes State laws that relate to employee benefit plans, the Michigan laws that are at issue do not expressly pertain to an employee benefit plan. Plaintiff is not asking that this Court declare that Michigan's laws prevail over any of ERISA's provisions. Plaintiff is requesting that the Court determine whether or not the City should have been lawfully permitted to enter into a contractual relationship with the Fund in the first place and thereafter. (Doc # 17, Pg ID 378-379) In this Court's prevision opinion (15-cv-11047, ECF No. 18), the Court found that the Fund failed to establish complete preemption. Plaintiff's claims are not preempted by ERISA.

## C. Defendants International Union of Operating Engineers Local 324 and John Stickel's Motion to Dismiss

### 1. Preemption

Defendants the Union and Stickel ask this Court to dismiss Plaintiff's Complaint on the basis that the City's claims are preempted by ERISA. (Doc # 9, Pg ID 167-173) Plaintiff's claims are not preempted by ERISA because the City's claims are based on an interpretation of Michigan law as stated above.

### 2. Statute of Limitations

The Union and Stickel argue that Plaintiff's claims are time-barred under 29 U.S.C. § 1451(f). (Doc # 9, Pg ID 175-179) These defendants allege that actions seeking a judicial declaration of rights regarding withdrawal liability under 29

U.S.C. § 1451(a)(1) must be brought six years after the date on which the cause of action took place. (Doc # 9, Pg ID 175) According to the Union and Stickel, the City's cause of action started to accrue on March 25, 2000, when the City signed its first agreement requiring its participation in the Pension Fund. (Doc # 9, Pg ID 176)

If the City was seeking a judicial declaration of rights pertaining to withdrawal liability, its claims are time-barred. Here, Plaintiff is seeking declaratory judgment and is claiming that none of the contracts between the City and the Fund were valid because Michigan Constitutional law makes the aforementioned agreements between Plaintiff and the Fund unlawful. According to Plaintiff, there is no statute of limitations with regard to its claims that are based on the premise that Michigan law makes its agreements with the Fund void, and neither defendant has demonstrated otherwise. The Court agrees with Plaintiff. Michigan courts have held that when a party pursues an action for declaratory relief once a substantive harm has already occurred, "[d]eclaratory relief may not be used to avoid the statute of limitations for substantive relief." *Taxpayers Allied for Constitutional Taxation v. Wayne Co.,* 450 Mich. 119, 129, 537 NW2d 596 (1995). However, when a claimant uses a claim for declaratory relief as a shield from a threat of future or potential harm, "the statute of limitations [does] not bar an otherwise valid claim for declaratory relief because it would derive from a claim for injunctive relief, which

is not barred." *Id.* Plaintiff is seeking to prevent potential harms in the future, and so there is no applicable statute of limitations that would apply to Plaintiff's claims.

### 3. Doctrine of Laches

"The doctrine of laches is designed to promote diligence and prevent enforcement of a stale claim." *Jabbar–El v. Sullivan,* 811 F.Supp. 265, 271 (E.D.Mich.1992) (citing *Waddell v. Small Tube Products, Inc.,* 799 F.2d 69, 74 (3rd Cir.1986)). Dismissal of a claim on the grounds of laches requires that there be: (1) unreasonable and unexcused delay in bringing the claim, and (2) material prejudice to the defendant as a result of the delay. *Vance v. United States*, 965 F. Supp. 944, 946-947 (E.D. Mich. 1997). To establish a laches defense, both of the prongs must be met and only then can the Court weigh the delay and prejudice to determine whether justice requires that the claim be barred. *Id.* When applying the doctrine of laches to bar a claim, the period of delay is measured from when the claimant had actual notice of the claim, or, would have reasonably been expected to inquire about the subject matter. *United States v. Mulligan*, 178 F.R.D. 164, 166 (E.D. Mich. 1998)

Here, the Union and Sitckel have demonstrated that Plaintiff's claims are barred under the doctrine of laches. As the Union and Stickel explain in their Motion, the first prong of the laches analysis has been satisfied because the City's attorneys and officials should have determined at the outset when Plaintiff chose to

participate in the Fund that the first agreement was void according to Michigan law. (Doc # 9, Pg ID 180) Additionally, Plaintiff did not offer the Court an explanation as to why it waited fifteen years from the date it entered into the first agreement, on March 25, 2000, to take any legal action regarding its belief that the agreements it entered into were void. The second prong has also been satisfied because the City's unreasonable and unexcused delay will cause harm and prejudice to the defendants. The Union and Stickel argue in their Motion that if this Court were to grant the City's request to be reimbursed for all of the years it contributed to the Fund, the pensions on which several employees and retirees have depended on will be unfunded. (Doc # 9, Pg ID 181)

Considering that both prongs of the laches analysis have been satisfied, the Court grants the Union and Stickel's Motion on this ground.

## III. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Defendant Operating Engineers Local 324 Pension Fund's Motion to Dismiss (Doc # 8) is **GRANTED**.

IT IS FURTHER ORDERED that Defendants International Union of Operating Engineers Local 324 and John Stickel's Motion to Dismiss (Doc # 9) is **GRANTED**.

                                              s/Denise Page Hood
                                              Chief Judge, U. S. District Court

DATED: March 31, 2019