UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CITY OF RIVERVIEW,

      Plaintiff,                    Civil Action No.: 18-11370
                                         Honorable Denise Page Hood
v.                                  Magistrate Judge Elizabeth A. Stafford

OPERATING ENGINEERS
LOCAL 324 PENSION FUND,
JOHN STICKEL, JOHN DOE,
INTERNATIONAL UNION OF
OPERATING ENGINEERS
LOCAL 324,

      Defendants.

_____/

## REPORT AND RECOMMENDATION ABOUT DEFENDANTS' MOTIONS TO DETERMINE ATTORNEYS' FEES [ECF NO. 23; ECF NO. 24]

### I.    INTRODUCTION

Plaintiff City of Riverview (the City) sued Defendants Operating Engineers Local 324 Pension Fund (the Fund), International Union of Operating Engineers Local 324 (the Union), John Stickel and John Doe, requesting declaratory relief under 28 U.S.C. § 2201. [ECF No. 1]. Chief Judge Denise Page Hood granted defendants' motions to dismiss. [ECF No. 21]. The Fund and the Union then moved for an award of attorneys'

fees and costs under ERISA, citing 29 U.S.C. §§ 1132(g)(1), 1451(e). [ECF No. 23; ECF No. 24].

The Fund requests an award of $37,599.72, [ECF No. 23, PageID.536], and Union requests an award of $9,067.50 [ECF No. 24, PageID.592].  Judge Hood referred the motions for attorneys' fees and costs to the undersigned under 28 U.S.C. § 636(b)(1)(B).  [ECF No. 25]. The Court held a hearing on October 30, 2019.  For the reasons below, the Court recommends that the Fund's motion be **GRANTED IN PART** and **DENIED IN PART**, and that the Union's motion be **GRANTED**.

## II.    BACKGROUND

The legal saga between the parties began in 2015, when the City sued defendants in the Oakland County Circuit Court, asking for the same relief as it does here.  [ECF No. 1, PageID.4].  The Fund removed the case to this Court, but it was remanded back to state court.  [*Id.*, PageID.5].  On remand, the state court found that it lacked subject matter jurisdiction, reasoning that the claims were defensively preempted under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.* [*Id.*, PageID.5-6].  After the Michigan Supreme Court denied the City's application for leave to appeal, the City filed its second complaint here. [*Id.*, PageID.6-7].

2

In May 2018, the City filed the complaint here.  [ECF No. 1].  Invoking ERISA[1] and federal question jurisdiction,[2] the City claimed that it lacked the authority under the Michigan Constitution to participate in a multi-employer pension plan that requires it "to contribute money to pay for the pension benefits of persons who do not work for the City and have provided no services to the City."  [ECF No. 1, PageID.15-16].

In March 2019, Judge Hood granted defendants' motions to dismiss. [ECF No. 21].  She found that the Court lacked subject matter jurisdiction and that the City's claims were barred under the doctrine of laches.  [*Id*.].

## III.   ANALYSIS

### A.

Under 29 U.S.C. § 1451(e), which applies to ERISA claims, "the court may award all or a portion of the costs and expenses incurred in connection with such action, including reasonable attorney's fees, to the prevailing party."  But the City argues that Judge Hood's finding that the Court lacks subject matter jurisdiction means that attorney's fees under

---

[1]The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*

[2] The complaint cites 29 U.S.C. § 1144(a), 29 U.S.C. § 1451(a)(1) and 28 U.S.C. § 1331.

ERISA should not be awarded,[3] and that awarding the requested fees would be unjust to the City.  [ECF No. 26, PageID.610-612].

Previously, the City's subject-matter-jurisdiction argument would have prevailed.  Courts had held, "To be a prevailing party, a party must receive at least some relief on the merits of his claim such as a judgment, an injunction, or a consent decree."  *Horner v. Kentucky High Sch. Athletic Ass'n*, 206 F.3d 685, 698 (6th Cir. 2000).  Since a dismissal for want of subject matter jurisdiction is not on the merits, courts held that such a dismissal renders no "prevailing party" under fee-shifting statutes.  *See Int'l Techs. Consultants, Inc. v. Stewart*, No. 07-13391, 2013 WL 1211082, at *4 (E.D. Mich. Jan. 28, 2013), *adopted*, No. 07-13391, 2013 WL 1210540

---

[3] To counter this argument, defendants relied on cases in which "both the court's subject-matter jurisdiction and the substantive claim for relief are based on the same federal statute."  *Primax Recoveries, Inc. v. Gunter*, 433 F.3d 515, 519 (6th Cir. 2006).  In *Primax*, the Sixth Circuit found that the district court retained subject matter jurisdiction to award attorney's fees even though the plaintiff had failed to state an ERISA claim.  *Id.*; *see also Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 444 (6th Cir. 2006) (explaining that the district court had jurisdiction to award attorney's fees under ERISA when the plaintiff has stated a colorable ERISA claim).  Here, Judge Hood did not find that the Court lacks subject matter jurisdiction because the City failed to state a claim under ERISA, so the reasoning of *Primax* and *Moore* is inapplicable.  That reasoning is also outdated because, as described below, the Supreme Court has now held that a court can award attorney's fees to the prevailing party under fee-shifting statutes even when the court lacks subject matter jurisdiction over the claim. *CRST Van Expedited, Inc. v. E.E.O.C.*, 136 S.Ct. 1642, 1646 (2016).

4

(E.D. Mich. Mar. 25, 2013) (collecting cases).  But the Supreme Court has now rejected that conclusion.

In *CRST Van Expedited, Inc. v. E.E.O.C.*, the Supreme Court interpreted the attorney's fees provision of Title VII, which allows the "prevailing party" to recover reasonable attorney's fees.  136 S.Ct. 1642, 1646 (2016) (citing 42 U.S.C. § 2000e-5(k)).  The found that Congress had no intent to require parties to prevail on the merits to be eligible for attorney's fees.  *Id.* at 1651-52.  "It would make little sense if Congress' policy of sparing defendants from the costs of *frivolous* litigation depended on the distinction between merits-based and non-merits-based frivolity." *Id.* at 1652 (internal citation and quotation marks omitted) (emphasis in original).  The Court concluded, "Congress must have intended that a defendant could recover fees expended in frivolous, unreasonable, or groundless litigation when the case is resolved in the defendant's favor, whether on the merits or not."  *Id.*  Thus, when a defendant prevails in an action, "district courts may award attorney's fees if the plaintiff's claim was frivolous, unreasonable, or groundless, or if the plaintiff continued to litigate after it clearly became so."  *Id.* at 1646 (internal citation and quotation marks omitted).

Courts have applied *CRST Van Expedited's* holding about Title VII's fee-shifting statute when interpreting other laws permitting an award of attorney's fees or costs to the "prevailing party."  *See Amphastar Pharm. Inc. v. Aventis Pharma SA*, 856 F.3d 696, 710 (9th Cir. 2017) (applying *CRST Van Expedited* to find that attorneys' fees may be awarded under the fee-shifting provision of the False Claims Act despite dismissal for lack of subject matter jurisdiction); *B.E. Tech., L.L.C. v. Facebook, Inc.*, 940 F.3d 675, 679 (Fed. Cir. 2019) (holding that "a defendant can be deemed a prevailing party even if the case is dismissed on procedural grounds rather than on the merits" to Fed. R. Civ. P. 54(d)(1)'s cost-shifting provision).

The fee-shifting provision for ERISA cases permits awards to the "prevailing party," § 1451(e), so the *CRST Van Expedited* holding applies to dismissed ERISA claims.  Thus, even though Judge Hood granted defendants' motion to dismiss because of lack of subject matter jurisdiction, defendants should be awarded attorneys' fees if the City's claims were frivolous, unreasonable, or groundless, or the City continued to litigate after it clearly became so.  *CRST Van Expedited*, 136 S.Ct. at 1646.[4]  The Court

---

[4] The Sixth Circuit had directed courts exercising discretion under § 1451(e) to assess a different, five-factor standard.  *Cent. States, Se. & Sw. Areas Pension Fund v. 888 Corp.*, 813 F.2d 760, 767 (6th Cir. 1987). But the Supreme Court in *CRST Van Expedited* said that courts must

finds that the City's claim was at least unreasonable, and that defendants should be awarded attorneys' fees and costs.

**B.**

The City began entering into bargaining agreements with the Union in 2000, but after the expiration of the 2007 agreement—in 2011—the City concluded that its contributions were financially burdensome.  [ECF No. 1, PageID.8; ECF No. 21, PageID.513].  But the Fund informed the City that if it withdrew from the Fund or refrained from making contributions, it would face withdrawal liability of over $3 million under ERISA; that liability grew to more than $4.5 million on 2016.  [ECF No. 1-7, PageID.65-66; ECF No. 1-8, PageID.68].  In July 2017, the parties reached a successor collective bargaining agreement for the period ending in June 2022.  [ECF No. 1-9].

The complaint here was filed in May 2018, nearly a year after the July 2017 successor agreement.  [ECF No. 1].  The City asserted that its participation in the Fund violated the Michigan Constitution and was thus void *ab initio*.  [*Id.*, PageID.15-19].  The City asked the Court to declare that it had no obligation to contribute to the Fund and that it could withdraw without liability.  [*Id.*].  And the City requested that the Court order the Fund

---

consider whether the claim was frivolous, unreasonable or groundless, as that was the congressional intent.  136 S.Ct. at 1651-52.  The Court thus relies here on the *CRST Van Expedited* standard.

to reimburse the City for all contributions it had made to the Fund "under

protest" while this matter was pending, and order that the City be

reimbursed for costs and attorney's fees.  [*Id.*].

      As noted, Judge Hood granted defendants' motions to dismiss.  [ECF

No. 21].  First, she held that the claims at issue were not ripe because any

harm to the City from the Court denying its request for declaratory relief

would not arise until after the City "chose to withdraw from the Fund, and

such harm would be self-imposed."  [*Id.*, PageID.520].  Within her ripeness

analysis, Judge Hood also reasoned that the City had "not endured a

hardship because it voluntarily entered into several agreements with the

Fund and any hardships that it faces would be the result of its own

decision-making."  [*Id.*, PageID.521].  Judge Hood also found the Court had

no jurisdictional authority over the City's claim that its agreements were

void under Michigan law; the City relied on neither a federal law nor

diversity of citizenship.  [*Id.*].

      And the City waited too long to seek a declaratory judgment that the

agreements were void.  Addressing the laches argument, Judge Hood said:

> As the Union and Stickel explain in their Motion, the first prong
> of the laches analysis has been satisfied because the City's
> attorneys and officials should have determined at the outset
> when Plaintiff chose to participate in the Fund that the first
> agreement was void according to Michigan law.  (Doc # 9, Pg
> ID 180)  Additionally, Plaintiff did not offer the Court an

explanation as to why it waited fifteen years from the date it entered into the first agreement, on March 25, 2000, to take any legal action regarding its belief that the agreements it entered into were void.  The second prong has also been satisfied because the City's *unreasonable and unexcused delay* will cause harm and prejudice to the defendants.  The Union and Stickel argue in their Motion that if this Court were to grant the City's request to be reimbursed for all of the years it contributed to the Fund, the pensions on which several employees and retirees have depended on will be unfunded.  (Doc # 9, Pg ID 181)

[ECF No. 21, PageID.525-526 (emphasis added)].

Judge Hood's reasoning in granting defendants' motions to dismiss answers the question of whether the City's claims were, at the very least, unreasonable.  As she noted, the City requested that the Court void contracts the City had entered into voluntarily more than fifteen years ago, and that it receive reimbursement of its contributions to the Fund as well as attorney's fees and costs.  Yet, Judge Hood found that the City's complaint for declaratory relief was filed without subject matter jurisdiction.  The claims were not ripe because the City faced harm only if it withdrew from the Fund, and it had done the opposite; it renewed its agreement to participate in the Fund.  And its claims were under Michigan law instead of federal law, so there was no federal question jurisdiction.

Given Judge Hood's reasoning, this Court does not hesitate to find that the City's claims and requests for relief were unreasonable and that

defendants are thus entitled to reimbursement of attorneys' fees and costs. *CRST Van Expedited*, 136 S. Ct. at 1646

## C.

The starting point for determining the amount of reasonable attorneys' fees is the "lodestar" amount. *Bd. of Trustees of Ohio Laborers' Fringe Ben. Programs v. Dixon Masonry, Inc.*, 2011 WL 3793502, at *3 (S.D. Ohio Aug. 25, 2011) (citing *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir.2008)). Under the lodestar method, courts calculate reasonable attorneys' fee awards by "multiplying the proven number of hours worked by a court-ascertained reasonable hourly rate." *Ellison v. Balinski*, 625 F.3d 953, 960 (6th Cir. 2010). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Courts have held that, once the lodestar figure is derived, an upward or downward adjustment is permitted based upon twelve factors first listed in *Johnson v. Georgia Highway Express*, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).[5] But many of the *Johnson* "factors usually are subsumed within

---

[5] Those factors are: "(1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service

10

the initial calculation of hours reasonably expended at a reasonable hourly rate."  *Hensley*, 461 U.S. at 434, n.9.  And more recently, the Supreme Court discouraged use of the *Johnson* factors except in rare or exceptional circumstances, deeming the lodestar method more objective and reiterating that "the lodestar figure includes most, if not all, of the relevant factors constituting a reasonable attorney's fee."  *Perdue v. Kenny A. ex. rel. Winn*, 559 U.S. 542, 553 (2010) (citation and internal quotation marks omitted). There is a "strong presumption" that the lodestar figure is reasonable, and there are few circumstances in which it should be deemed inadequate.  *Id.* at 554.

The City does not contest the reasonableness of the hourly rates charged by the Fund's or the Union's counsel.  [ECF No. 26, PageID.618; ECF No. 27, PageID.711].  Thus, the only dispute is whether the number of hours counsel claimed they expended is reasonable.  *Bd. of Trustees of Ohio Laborers' Fringe Ben. Programs*, 2011 WL 3793502, at *3.

---

properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."  *Johnson*, 488 F.2d at 717-19.

11

**D.**

Courts review billing claims for "[e]xcessive, redundant, or otherwise unnecessary hours, or hours spent on unsuccessful claims," which are usually excluded from fee awards. *Butcher v. Bryson*, 2014 WL 4385876, at *3 (M.D. Tenn. Sept. 5, 2014) (citing *Hensley*, 461 U.S. at 437). It is incumbent upon the party requesting a fee award to justify the size of its award and document the appropriate hours expended and hourly rates. *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1176 (6th Cir.1990), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001). Attorneys must both exclude unnecessary hours from their bills and maintain records that are sufficiently detailed to enable the courts to review the reasonableness of the hours expended. *Id.* at 1177.

### 1. The Fund

The Fund attached invoices for work by attorneys Nancy H. Pearce and Daniel G. LeVan that the Fund asserts should be reimbursed, totaling 163 hours. [ECF No. 23-2, PageID.551; ECF No. 23-3, PageID.554]. The City contends that Pearce and LeVan submitted duplicate billing for May 7 and May 8, 2018, for review and analysis of the complaint. [ECF No. 26, PageID.619]. And it asserts block billing entries by LeVan made in June

12

2018 should be rejected because they lack sufficient substantiation to determine their reasonableness.  [*Id.*, PageID.620].  Lastly, the City asserts that given the fact that the parties began litigating this case in 2015, the "reoccurring nature of many of the arguments made by the Fund" calls into question the reasonableness of the hours billed.  [ECF No. 26, PageID.621-622].

The Court rejects the City's argument that the Funds billing records include block billing.  "[B]lock billing refers to the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks."  *Potter v. Blue Cross Blue Shield of Michigan*, 10 F. Supp. 3d 737, 763 (E.D. Mich. 2014) (internal citations and quotation marks omitted).  The practice of block billing is discouraged, though not prohibited, and courts "have reduced fees because of a parties' use of vague block billing."  *Id.* at 764.

The billings entries of which the City complains itemize LeVan's specific tasks rather than stating only the total daily time spent on the case.  [ECF No. 23-5, PageID.573-574; ECF No. 26, PageID.620].  It is true that LeVan grouped together specific tasks.  For example, he grouped together the June 6, 2018 tasks of "review new complaint and prior motion; research

13

for and draft motion to dismiss." [*Id.*].  But LeVan did not simply state the number of hours that he worked on the case on June 6.  And even if LeVan's practice of grouping together specific tasks were considered block billing, his entries were not so vague that they warrant a reduction. "[C]ounsel, of course, is not required to record in great detail how each minute of his time was expended.  But at least counsel should identify the general subject matter of his time expenditures."  *Hensley*, 461 U.S. at 437 n.12.  As required, LeVan identified the general subject matter of his time expenditures.  [ECF No. 23-5, PageID.573-574].

The Court also rejects the City's argument that Pearce's and LeVan's work was unnecessarily duplicative.  "Multiple-lawyer litigation is common and not inherently unreasonable," but courts must consider whether a case is overstaffed.  *The Northeast Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 704 (6th Cir. 2016).  Given the potential harm to the Fund had the City's claims succeeded, the Fund did not overstaff when assigning two attorneys to the case.  The City argues that the Fund's hours should be reduced because both Pearce and LeVan billed for reviewing the complaint and preparing the motion to dismiss.  [ECF No. 26, PageID.619].  There is nothing extraordinary or unreasonable about co-counsel jointly performing those duties.  *See Couch v. Transworld Sys., Inc.*, No. 3:16-CV-00618-

14

CRS, 2017 WL 1520426, at *4 (W.D. Ky. Apr. 25, 2017) ("The Court finds that it is reasonable for one attorney to ask another attorney in her firm or ask her co-counsel to review pleadings or other documents before filing them.").

And while it is true that the state and federal actions involved the same facts and requests for relief, the Fund points out that arguments it raised here were not applicable in state court.  Indeed, the argument of the Fund that prevailed in this Court was about federal subject matter jurisdiction.

The Court does, however, find that some of the Fund's entries are vague because of redactions.  For example, some entries are said to be for "review & analysis of," for "draft & prepare" and for "review and revise," followed by redactions.  [ECF No. 23-5, PageID.570-581].  Because of the Fund's vague entries, a 10% across the board reduction is warranted. *Cleveland Area Bd. of Realtors v. City of Euclid*, 965 F. Supp. 1017, 1021 (N.D. Ohio 1997) (reducing request by 10% because of insufficient documentation); *Erbel v. Johanns,* No. 3:04-CV-555, 2008 WL 11284907, at *5 (E.D. Tenn. Sept. 5, 2008) (same).

### 2. The Union

The Union submitted billing records for Attorney Andrew Nickelhoff, who requests reimbursement for 46.5 hours of work.  [ECF No. 24-2, PageID.596-597].  The City argues that Nickelhoff's time entries for hours in June 2018, should be rejected as block billing.  [ECF No. 27, PageID.711-712].  The City also objects to the number of hours Nickelhoff billed, arguing that "it is not possible to assess the reasonableness of the time devoted to each task."  [*Id.*, PageID.713].  The Court is unpersuaded.  Nickelhoff did not use block billing and his entries are sufficiently detailed.  The Court recommends finding Nickelhoff's fees reasonable. [ECF No. 24-2, PageID.596-597].

## IV.   CONCLUSION

The Court recommends that the Fund's motion for attorneys' fees [ECF No. 23] be **GRANTED IN PART** and **DENIED IN PART,** and that the Fund be **AWARDED** $33,839.75.  The Union's motion for attorney's fees [ECF No. 24] should be **GRANTED**, and it should be **AWARDED** $9,067.50.


                                                  s/Elizabeth A. Stafford
                                                  ELIZABETH A. STAFFORD
                                                  United States Magistrate Judge

Dated: November 14, 2019

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation.  *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection

must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this Report and

Recommendation to which it pertains.  Not later than fourteen days after

service of objections, **the non-objecting party must file a response** to

the objections, specifically addressing each issue raised in the objections in

the same order and labeled as "Response to Objection #1," "Response to

Objection #2," etc.  The response must be **concise and proportionate in**

17

**length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

     The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 14, 2019.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
